**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FRANK SOMMESE, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO.: 11-CV-2827 |
| | ) | |
| AMERICAN BANK AND TRUST COMPANY, | ) | Judge Robert M. Dow, Jr. |
| N.A., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Frank Sommese, Jeff Gennarelli, and Christine Leyden brought this action

against Defendants American Bank and Trust Company, Julia Klaus, and James Allen[1] for

violation of the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. § 201 *et seq.* (Count I)

and violation of the Illinois Wage Payment and Collection Act (Counts II and III). Defendants

have moved to dismiss [53] Counts II and III of the complaint pursuant to Federal Rule of Civil

12(b)(6), and Defendant Julia Klaus has moved to dismiss [55] the entire action against her for

lack of personal jurisdiction. For the following reasons, the Court grants in part and denies in

part Defendants' motion to dismiss [53] and denies Defendant Julia Klaus' motion to dismiss

[55]. Plaintiffs' "Request for a Hearing" [65] is stricken as moot.

**I.    Background**[2]

Defendant American Bank and Trust Company ("AB&T") is a bank that does business in

Iowa and Illinois and that has approximately 11 locations in Illinois. Plaintiffs Frank Sommese,

---

[1]   In June 2012, Plaintiffs voluntarily dismissed with prejudice all claims against Defendant James Allen.

[2]   For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Jeff Gennarelli, and Christine Leyden were all employees of AB&T in its mortgage division. Plaintiffs allege that Defendants engaged in a common practice and scheme of denying Plaintiffs the wages that they were owed, including overtime wages and bonuses. According to Plaintiffs, Jeff Gennarelli and Frank Sommese both were denied wages that they were owed pursuant to their employment agreements. Plaintiffs further allege that Christine Leyden was denied minimum wages, overtime wages, and bonuses that she was entitled to pursuant to her employment agreement with AB&T.

During Plaintiffs' employment with AB&T, Defendant Klaus worked as an officer of AB&T as the Senior Vice President of Human Resources. Plaintiffs allege that Defendant Klaus had responsibility and control over Plaintiffs' wages, including minimum wages, overtime wages, and bonuses. Plaintiffs also have presented affidavits which attest that Defendant Klaus traveled to the state of Illinois on a regular basis to meet with AB&T employees located in Illinois and that Defendant Klaus met with Plaintiffs on several occasions in Illinois in her role as Senior Vice President of Human Resources. According to Plaintiffs, Defendant Klaus also conducted trainings, orientations, and meetings in Illinois on a regular basis.

## II. Analysis

Defendants have moved to dismiss Plaintiffs' claims under two theories. First, Defendant Klaus moves to dismiss Plaintiffs' claims against her, arguing that she is not subject to personal jurisdiction in Illinois. Second, Defendants Klaus and American Bank move to dismiss Counts II and III for failure to state a claim on which relief may be granted, or, for failure to demonstrate supplemental jurisdiction.

### A. Personal Jurisdiction

The Court must dismiss an action against a party over whom the Court lacks personal

jurisdiction. See Fed. R. Civ. P. 12(b)(2). The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. See *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). The Court may consider affidavits and other documents outside the pleadings in reaching its decision. See *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). The Court must construe all facts concerning jurisdiction in favor of the non-movant, including disputed or contested facts (*Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir. 1984)), unless proved otherwise by the non-movants' affidavits or exhibits. See *Purdue Research Foundation v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004).

Where no federal statute authorizes nationwide service of process, the law of the forum state governs personal jurisdiction. Fed. R. Civ. P. 4(k)(1)(a). A court's exercise of personal jurisdiction may be limited by the applicable state statute or the federal Constitution. Because the Illinois long-arm statute is coextensive with federal due process requirements, the two-step inquiry collapses into one—whether the exercise of personal jurisdiction over the defendants comports with constitutional due process. *Trading Technologies Inter. Inc. v. BCG Partners, Inc.*, 2011 WL 1220013, *2 (N.D. Ill. Mar 28, 2011); see also *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The Court must determine whether Defendant Klaus has sufficient "minimum contacts" with Illinois such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Put another way, "each defendant must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being hauled into court' there." *Tamburo*, 601 F.3d at 701 (quoting *Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Under the "minimum contacts" test, a defendant may be subject to either general or specific jurisdiction. *Id*. For general jurisdiction, a defendant must have "continuous and systematic" contacts with the forum. See *Helicopteros Nacionales de Colimbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2003). On the other hand, specific jurisdiction is more limited. The Seventh Circuit instructs that specific jurisdiction is appropriate where: (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state; (2) the alleged injury arises out of the defendant's forum-related activities; and (3) the exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice. *Tamburo*, 601 F.3d at 701 (citing *Burger King*, 471 U.S. at 472; *Int'l Shoe*, 326 U.S. at 316).

Looking at the complaint and affidavits, at a minimum, Plaintiffs appear to have carried their burden to establish specific jurisdiction over Defendant Klaus. Although she lives and works in Iowa, Defendant Klaus acknowledges that she traveled to the state of Illinois at least seven or eight times on AB&T business. Furthermore, although Defendant Klaus attests that she does not recall having met with Plaintiffs individually or as a group, both Mr. Genarelli and Ms. Layden attest that they have met with her several times and that they spoke with her regarding the compensation issues at play in this litigation—specifically, bonus and wage payments. Plaintiffs also attest that Defendant Klaus conducted trainings, orientations, and meetings for

AB&T in Illinois on a regular basis, and that they are aware of Klaus's presence in Illinois because they coordinated, attended, or scheduled the trainings and orientations.

Defendant argues that Plaintiffs' allegations are (1) not included in the complaint and (2) are disputed by Klaus's affidavit. Neither of these arguments is particularly persuasive. The fact that the majority of Plaintiffs' jurisdiction-related allegations are in affidavits, and not the complaint, is of no moment; the Court may consider affidavits and other documents outside the pleadings in reaching its decision. See *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). Furthermore, at the motion to dismiss stage, the conflicting affidavits are construed in favor of Plaintiffs. See *Purdue Research Foundation v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004). Plaintiffs' affidavits unequivocally state that Klaus had responsibility and control over employee wages, including minimum wages, overtime wages, and bonuses, and that Klaus communicated to Plaintiffs that she had authority and control over compensation issues including wages, changes to compensation, and the eligibility of new employees. Plaintiffs further allege that they raised with Klaus the fact that they had not been paid the wages and bonus payments that they believed they were owed. At this stage, these allegations are sufficient to confer personal jurisdiction.

Klaus's better argument is that the so-called "fiduciary shield doctrine" protects her from being sued in Illinois. Illinois courts lack personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of her employer or other principal. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1995) (citing *Rollins v. Ellwood*, 565 N.E.2d 1302 (1990)). The rationale for the fiduciary shield doctrine is that it would be "unfair and unreasonable * * * to assert personal jurisdiction over an

individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." *Rollins,* 565 N.E.2d at 1318. Application of the doctrine is discretionary or equitable, not absolute. See *Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l, Inc.,* 2002 WL 31427021, at *3 (N.D.Ill. Oct. 30, 2002). In evaluating whether it is equitable to apply the doctrine in the circumstances of a particular case, courts consider whether (i) the individual's personal interests motivated his actions and presence in the state and (ii) the individual's actions were discretionary. *Id.;* see also *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.,* 626 F. Supp. 2d 837, 847 (N.D. Ill. 2009). Klaus contends that her only contacts with Illinois were undertaken in her capacity as an employee of Defendant AB&T.

To ascertain whether an individual's personal interests motivated his actions, courts look at a number of factors including the extent to which the individual seeking protection under the doctrine is a shareholder or has a direct financial stake in the corporation's health. See *Cont'l Casualty Co. v. Marsh,* 2002 WL 31870531, at *7 (N.D.Ill. Dec. 23, 2002) (citing *Plastic Film Corp. of America, Inc. v. Unipac, Inc.,* 128 F. Supp. 2d 1143, 1147 (N.D. Ill. 2001)) ("[t]he determinative factor is the individual's status as a shareholder, not merely as an officer or director"); *Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.,* 254 F. Supp. 2d 1028, 1037 (N.D. Ill. 2003) (applying fiduciary shield doctrine despite position as officers and directors because plaintiff failed to provide factual support for claim they possessed substantial ownership interests in company); *Margulis v. Med. Parts Int'l, Inc.,* 1999 WL 183648, at *5 (N.D. Ill. Mar. 25, 1999) (citing *Plymouth Tube Co. v. O'Donnell,* 1995 WL 387595 (N.D. Ill. June 28, 1995) ("the fiduciary shield defense is unavailable to high-ranking company officers and shareholders [because they] have a direct financial stake in the company's health and

therefore can be subjected to personal jurisdiction for actions that result in both personal and corporate benefit")). The personal interests allegedly motivating the individual's actions "need not be pecuniary—they may be dislike or malice towards the plaintiff." *Rice,* 38 F.3d at 912; *Jones,* 52 F. Supp. 2d at 883. However, a defendant who dislikes or acts maliciously towards a plaintiff will not necessarily lose the fiduciary shield. Instead, the dislike must "have created or exacerbated the harm to the [plaintiff]." *Rice,* 38 F.3d at 912.

As to the second factor, courts have found that the "shield generally does not apply when the individual's actions are discretionary." *Jones v. Sabis Educ. Sys., Inc.,* 52 F. Supp. 2d 868, 884 (N.D. Ill. 1999) (quoting *Brujis v. Shaw,* 876 F. Supp. 975, 978 (N.D. Ill. 1995) ("The shield generally should not apply where the 'employee has the power to decide what is to be done and chooses to commit the acts that subject him to [jurisdiction].'"). However, "just because an individual is a member of management or holds controlling positions in a corporation does not nullify the protection of the fiduciary shield." See *Int'l Fin. Servs. Corp. v. Didde Corp.,* 2002 WL 398513, at *5 (N.D. Ill. Mar. 14, 2002) (citing *State Security Ins. Co. v. Hall,* 530 F. Supp. 94, 98 (N.D. Ill.1981)). This is because Illinois recognizes that corporate officers, directors and shareholders are separate and distinct from the corporation. *Id.*

In deciding whether to apply the fiduciary shield doctrine, courts have focused on the key language of *Rollins* that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Brujis,* 876 F. Supp. at 979 (quoting *Rollins,* 565 N.E.2d at 1315); see also *Minemyer v. R–BOC Representatives, Inc.,* 2007 WL 2461666, at *4 (N.D. Ill. Aug. 24, 2007) (in applying the doctrine, courts "must also consider, based on equitable principles, whether the factual scenario

in its entirety warrants application of the shield against personal jurisdiction."). This understanding of the doctrine may reflect a reading of *Rollins* that "suggests a broader approach to the fiduciary shield doctrine than merely asking whether the defendant exercised discretion or whether he was acting in an individual or representative capacity." *Id.* "Decisions that turn on the representative nature of the defendant's actions emphasize the unfairness of subjecting someone to jurisdiction whose conduct in Illinois was not of his own choosing. Similarly, those that turn on the defendant's use of discretion emphasize that it would not be unfair to exercise jurisdiction over someone acting in a representative capacity when he was in a position to decide whether or not to perform acts in Illinois." *Id.*

As to the first factor, the allegations and information before the Court are not sufficient to suggest that Klaus's personal interests motivated her to make the employment decisions at issue. As discussed above, the "determinative factor" in considering whether an individual's pecuniary interests may have motivated her actions "is the individual's status as a shareholder, not merely as an officer or director." *Plastic Film Corp. of America, Inc.,* 128 F. Supp. 2d at 1147. Although she holds a high position with AB&T, Klaus is not an owner of the company nor is she a shareholder. There simply are no allegations sufficient to raise an inference that Klaus' actions—taken on behalf of AB&T—were motivated in whole or in part by a desire to further her own financial or professional interests. Rather, the allegations suggest that she merely was acting in her role as a senior human resources director.

The second factor—whether Klaus's actions were discretionary—is a closer call. As discussed above, courts do not consider it unfair to exercise jurisdiction over an individual when the actions giving rise to personal jurisdiction are discretionary. *Brujis,* 876 F. Supp. at 978. On the surface, Klaus's high-ranking position as Senior Vice President of Human Resources

presumably vested her with the discretion to make certain decisions with respect to wages—and this presumption is bolstered by Plaintiffs' affidavits which affirmatively state that Klaus had responsibility and control over employee wages. In response, Klaus's best position is that, despite her high ranking position in the company, she was essentially compelled by her duty as a Senior Vice President to follow company policies in making hiring, firing, and compensation decisions. While this argument is persuasive, case law suggests that in her position she has sufficient discretion and authority to be subject to personal jurisdiction. See *Farmer v. DirectSat USA, LLC*, 2010 WL 380697, at *3-4 (N.D. Ill. Jan. 28, 2010) (holding that the chief administrative officer/former director of human resources as well as the current director of human resources, who had the authority to hire and fire employees and the authority to make decisions regarding wage and hour classifications and employee compensation, were not entitled to the protections of the fiduciary shield doctrine); *Darovec Mktg. Group, Inc. v. Bio-Genetics, Inc.,* 42 F. Supp. 2d 810, 820 (N.D. Ill. 1999) (holding that "compliance coordinator" who had discretion over publication and contents of allegedly defamatory memo, and authority to terminate distributors, was not entitled to fiduciary shield);

Although Defendant contradicts Plaintiffs' allegations that Klaus had responsibility and control over Plaintiffs' wages, including minimum wages, overtime wages, and bonuses, as noted earlier, the Court must accept Plaintiffs' allegations as true. Plaintiffs' allegations paint a very different picture than that painted by Klaus's affidavit and suggest that Klaus was instrumental in the issues giving rise to this litigation. At this stage, because the Court must accept these allegations, the Court finds that Plaintiffs have carried their burden of establishing jurisdiction over Klaus. See also *Hundt v. DirectSat USA, LLC*, 2010 WL 1996590, at *7-8 (N.D. Ill. 2010) (finding personal jurisdiction over human resource manager who made

"decisions regarding wage and hour classifications, employee compensation, and capital expenditures"); *Farmer v. DirectSat.* 2010 WL 380697 at *3-4 (noting that "the allegations of the Amended Complaint are sufficient to infer that each of the proposed individual defendants had significant discretion in their roles"). The Court takes no position on the merits of the claims against Klaus; discovery will shed light on that. Further, if it turns out that Plaintiffs are mistaken or have not been forthright as to Klaus's discretion and involvement, Defendants may pursue available remedies at that time. See *Minemyer v. R-Boc Representatives, Inc.*, --- F.R.D. ----, 2012 WL 1658253, at *1 (N.D. Ill. May 11, 2012) (noting that "[i]f after further discovery it should prove appropriate, [Mr. Grimsley] will have the opportunity to move for dismissal once again and this Court retains the right to consider the motion on a more complete record."). In other words, if discovery reveals that Defendant Klaus' involvement was entirely at the direction of her employer and that she merely was following AB&T's policies and not exercising her own discretion in her interactions with Plaintiffs in Illinois, then Defendants may once again move for dismissal on jurisdiction grounds. But for now, Plaintiffs have met their burden of demonstrating that the Court has personal jurisdiction over Defendant Klaus.

### B. Counts II and III

In Defendants' other motion to dismiss, they seek dismissal of Counts II and III on failure-to-state-a-claim and subject-matter-jurisdiction grounds. The purpose of a Rule 12(b) motion to dismiss is not to decide the merits of the case. A Rule 12(b)(6) motion tests the sufficiency of the complaint, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990), while a Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction. *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). In reviewing a motion to dismiss under either rule, the Court takes as true all factual allegations in Plaintiff's complaint

and draws all reasonable inferences in her favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Long*, 182 F.3d at 554. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Count II is brought solely by Plaintiff Leyden and alleges a "violation of the Illinois wage hour laws" because Defendants failed "to pay overtime wages and bonuses." The only specific statute referenced in Count II is the Illinois Wage Payment and Collection Act ("IWPCA"), but the second amended complaint does reference Illinois wage law generally. Defendants contend that the IWPCA does not provide a remedy for unpaid overtime compensation (and they are correct) and therefore Leyden fails to state a claim for unpaid overtime compensation upon which relief may be granted. However, construing the allegations in the light most favorable to Plaintiff Leyden, it is certainly plausible that when she states in Count II that Defendants have violated "Illinois Wage and Hour Laws" by failing to pay minimum wages, overtime wages, and bonuses, she is seeking unpaid overtime compensation under the appropriate statutory scheme (the Illinois Minimum Wage Law). Clearly, Defendants understand the gravamen of Count II and thus Plaintiffs' complaint gives them sufficient notice of Leyden's claims. See *Payton v. Rush-Presbyterian-St.Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999) (reiterating that a

complaint is only required to contain enough facts to "allow the court and the defendants to understand the gravamen of the plaintiff's complaint.").

Furthermore, even if Plaintiff misstated the applicable statute for Plaintiff Leyden's overtime wages claim in Count II, that does not amount to sufficient reason to dismiss the count. In *Central States, Southeast and Southwest Areas Pension Fund v. Denny*, the defendants sought dismissal of a claim because the plaintiff had relied on the wrong statute. 250 F. Supp. 2d 948, 952 (N.D. Ill. 2003). In denying the motion to dismiss, the court held that "[a] complaint need not set out all of the applicable law or facts provided it notifies the defendant of the claim's nature. Although the Pension Fund did cite to the wrong statute in one paragraph, it is clear elsewhere that it seeks relief for withdrawal liability arising out of ERISA's multi-employer pension plan." *Id.* at 953. The court emphasized the importance of giving defendants notice, and concluded that the plaintiff had done so, even if it had cited the wrong statute. Here, Defendants clearly are on notice of Plaintiff Leyden's claims.

Defendants also argue that Plaintiff Leyden's state law claims are sufficiently distinct from her federal claim (based on alleged violations of the Fair Labor Standards Act ("FLSA")) such that supplemental jurisdiction is not appropriate. Defendants' arguments with respect to Plaintiff Leyden's state law claims fail. There really is no question that supplemental jurisdiction is appropriate with regard to Leyden's unpaid bonus claim as asserted in Count II. "Judicial power exists to hear both state and federal claims if the federal claim has substance sufficient to confer subject matter jurisdiction on the court and if the claims derive from a common nucleus of operative fact. Only a loose factual connection between the federal and state claims must exist." *Royal Towing, Inc. v. City of Harvey*, 350 F. Supp. 2d 750, 753 (N.D. Ill. 2004) (emphasis added). Here, Plaintiff Leyden's state law claims stem from the same central

12

fact pattern as her FLSA claim—the primary question being whether Leyden was paid what she was owed. Whether asserted as an FLSA claim or claims for unpaid wages and bonuses, Plaintiff Leyden's claims are derived from the same common nucleus of operative facts, which flow from AB&T's alleged failure to pay Plaintiff Leyden wages that she is owed.

Count III is brought by Plaintiffs Gennarelli and Sommese against Defendant Klaus, alleging state law breach of contract violations arising under the IWPCA. Plaintiffs Sommese and Gennarelli do not allege federal claims. Nevertheless, they contend that supplemental jurisdiction is appropriate because Leyden has asserted FLSA claims and they all worked together during the same period and were subject to a "common scheme to deny Plaintiffs their wages." Plaintiffs cite no authority for their position that plaintiffs with state law claims can piggyback on the federal claim of a separate plaintiff. Although it may be appropriate in certain instances, as set forth below, Plaintiffs' allegations are too general to support such a theory in these circumstances.

Defendants contend that the claims of Sommese and Gennarelli are not derived from the same common nucleus of operative facts as Plaintiff Leyden's claims, and, based on the allegations in Plaintiffs' complaint, the Court agrees. While a "loose factual connection between the claims is generally sufficient" (see *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995) and *Ammerman v. Sween,* 54 F.3d 423, 424 (7th Cir. 1995)), it is not enough that the claims be tangentially related (see *Hernandez v. Dart*, 635 F. Supp. 2d 798, 814 (N.D. Ill. 2009) (citing *Chaney v. City of Chicago.,* 901 F.Supp. 266, 270 (N.D. Ill. 1995)). Furthermore, the "facts linking state to federal claims must be 'operative,' *i.e.*, they must be 'relevant to the resolution of' the federal claims." *U.S. v. Clark*, 2010 WL 476637, *1 (N.D. Ill. Feb. 3, 2010) (citing *Berg v. BCS Financial Corp.,* 372 F. Supp. 2d 1080, 1093 (N.D. Ill. 2005));

see also *General Auto Serv. Station v. The City of Chicago,* 2004 WL 442636, *12 (N.D. Ill. Mar. 9, 2004) (state law claim that provided "factual background" for federal constitutional claim was not sufficiently related to give rise to supplemental jurisdiction). While "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties," a district court may exercise its jurisdiction when "judicial economy, convenience and fairness to litigants" so demands. *Gibbs*, 383 U.S. at 726. If a plaintiff's claims are "such that he would ordinarily be expected to try them all in one judicial proceeding," exercise of federal jurisdiction is appropriate. *Id.* at 725. A district court should also retain jurisdiction over supplemental claims when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

Based on the allegations in Plaintiffs' second amended complaint, the Court concludes that the claims of Plaintiffs Sommese and Gennarelli are not sufficiently related to Plaintiff Leyden's federal claim such that "they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The sets of claims involve different "evidentiary and legal burden[s]." *Clark*, 2010 WL 476637 at *1; see also *White v. Addante*, 498 F. Supp. 2d 1109, 1112 (N.D. Ill. 2007) (federal and state claim did not share common nucleus of operative facts because they did not share common elements of proof); *Prudential-Bache Secs., Inc. v. Lisle Axis Assoc.,* 657 F. Supp. 190, 195 (N.D. Ill. 1987) ("'[o]perative fact,' as the term itself demonstrates, is a proof-oriented concept."); *Salei v. Boardwalk Regency Corp.,* 913 F. Supp. 993, 998-99 (E.D. Mich. 1996) (noting that plaintiff's state and federal law claims all arose from defendant's efforts to collect a debt and that when "viewed from this broad perspective" the claims shared a common set of facts, but finding no supplemental jurisdiction

because "upon closer inspection, it is apparent that [p]laintiff's state and federal claims do not share any of the same 'operative facts * * * the facts that are relevant to the resolution of [the federal claim] are completely separate and distinct from the facts that bear on [p]laintiff's state claims"). For example, whether Defendant Klaus breached the terms of the contracts of Sommese and Gennarelli is unrelated to whether AB&T failed to pay Leyden's overtime wages under the FLSA. Granted, the two sets of claims do share a common backdrop—whether employees of AB&T are paid what they are owed. However, the claims do not share "operative facts"—that is, facts relevant to the disposition of the claims. *Clark*, 2010 WL 476637 at *1; *General Auto Serv. Station*, 2004 WL 442636 at *12. There simply is not a good reason to allow Plaintiffs Sommese and Gennarelli to bootstrap their purely state law, contract-based claims onto Leyden's FLSA claim.

Furthermore, the interests of "judicial economy, convenience and fairness to litigants" do not demand that both sets of claims be tried together in federal court. *Gibbs*, 383 U.S. at 726. Since, as explained above, the evidence required to prove the two sets of claims is materially distinct, Plaintiffs will suffer no inconvenience, prejudice, or even duplication of effort trying the state claims in state court. As the lawsuit is still in its early stages, the Court has not committed "substantial judicial resources" to the state claims such that dismissal will cause a substantial duplication of effort." *Wright*, 29 F.3d at 1251. Furthermore, the "correct disposition" of the state law claims is not "so clear as a matter of state law that it could be determined without further trial proceedings and without entanglement with any difficult issues of state law" that considerations of judicial economy warrant retention and decision rather than relinquishment of the case to the state court. *Brazinski v. Amoco Petroleum Additives Co*., 6 F.3d 1176, 1182 (7th Cir. 1993). Finally, Plaintiffs admit that Sommese and Gennarelli have brought state law claims

against, at a minimum, AB&T in Iowa state court. For these reasons, the interests of judicial economy weigh heavily against keeping the claims of Sommese and Gennarelli in federal court.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the state law claims of Plaintiffs Sommese and Gennarelli against Defendant Klaus do not share the same operative facts as Plaintiff Leyden's claims against AB&T and Klaus. Accordingly, Count III does not lie within this Court's supplement jurisdiction and must be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).[3] The portion of Defendants' motion to dismiss [53] related to Count III is granted, and the remainder of the motion (as it pertains to Count II) is denied. Defendant Klaus's motion to dismiss [55] for lack of personal jurisdiction is denied. Plaintiffs' "Request for a Hearing" [65] is stricken as moot.

Dated: July 23, 2012

_____
Robert M. Dow, Jr.
United States District Judge

---

[3] Pursuant to 735 ILCS 5/13-217, Plaintiffs have the greater of one year or the remainder of the applicable limitations period to refile these claims in an Illinois court.